The judgment of the district court in favor of Berwald and the trustee, respectively, is affirmed.

**United States of America, Appellant,**

**In re GRAND JURY SUBPOENAS DUCES TECUM.**

No. 84–2353.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1985.

Decided Sept. 12, 1985.

Rehearing and Rehearing En Banc Denied Nov. 26, 1985.

---

Julian S. Greenspun, Washington, D.C., for appellant.

John Powers Crowley, James R. Streicker, Matthew F. Kennelly, Chicago, Ill., for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and WOODS,* District Judge.

---

\* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

HENRY WOODS, District Judge.

The United States appeals from an order of the District Court[1] quashing grand jury subpoenas duces tecum served upon two attorneys. The attorneys served with these grand jury subpoenas represented American Grain and Related Industries (Agri) during a criminal prosecution which commenced with a July 20, 1983 indictment charging Agri and six of its employees with conspiring to remove and convert to Agri's use a quantity of wheat owned by the Commodity Credit Corporation, an agency of the United States. 15 U.S.C. § 714m(d). The jury returned guilty verdicts against Agri and three of the employees, but these verdicts were set aside by a penal of this court in *United States of America v. American Grain and Related Industries, et al.*, 763 F.2d 312 (8th Cir. 1985).[2]

Subsequent to the jury verdict against Agri, a grand jury investigation was commenced to determine whether Agri's President, B.J. O'Dowd, should be prosecuted for conspiring to conceal the removal of the wheat. This grand jury investigation led to the United States Attorney's discovery of two corporate documents prepared by Agri's employees on May 5, 1983, immediately prior to the removal of the grain. An order had been entered on the third day of Agri's trial which should have resulted in its attorneys' surrendering these two documents to the government. However, when the attorneys complied with the discovery order during trial, they produced approximately 800 documents, which did not include the two referred to above. As a part of the grand jury investigation of B.J. O'Dowd, after Agri's conviction, the United States Attorney asked Agri's attorneys to explain why these two documents had not been produced during Agri's trial. By letter, the attorneys explained that they

2. For a more detailed statement of the facts leading to the indictment of Agri and the six employees, *see* Judge George G. Fagg's opinion reversing these underlying convictions.

had no firm recollection of seeing the two documents and that if they had not been produced as required, it was due to inadvertence and the fact that the documents produced during trial were assembled hastily because of the time pressure involved.

Subsequently, the subject grand jury subpoenas duces tecum were issued to the two attorneys directing them to appear before the grand jury and to produce any notes, memoranda or correspondence in their file in any manner related to or discussing the two documents referenced above. These two attorneys retained counsel who successfully moved to quash the subpoenas, based on the assertion of the attorney-client and work product privileges. The District Court held that the government failed to make a prima facie case of fraud or crime practiced by the attorneys and therefore sustained the argument that these privileges precluded enforcement of the grand jury subpoenas.

■ When a claim of privilege is asserted in the context of resisting compliance with a grand jury subpoena, strong competing principles are at odds. The broad investigatory powers of the grand jury are both historic and essential to their effective operation. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). However, these broad investigatory powers do not require production of evidence protected by a valid claim of privilege. *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). In this case Agri and its two attorneys relied upon the attorney-client and the work product privileges to persuade the District Court to quash the grand jury subpoenas duces tecum.

■ The attorney-client privilege encourages clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). However, the purpose of the attorney-client privilege is not furthered "when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated

criminal or fraudulent scheme," *In re Berkley & Co., Inc.,* 629 F.2d 548, 553 (8th Cir.1980), and therefore the cloak of the attorney-client privilege is removed upon "a prima facie showing that the legal advice was obtained in furtherance of illegal or fraudulent activity...." *Id.* This exception to the attorney-client privilege is commonly referred to as the crime or fraud exception.

Although the work product privilege "is distinct from and broader than the attorney-client privilege," *United States v. Nobles,* 422 U.S. 225, 238 N. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975), the court below applied the crime or fraud exception to that privilege, as well as the attorney-client privilege. While this Circuit has recognized the unresolved question of whether or not the crime or fraud exception applies to the work product privilege, *In re Murphy,* 560 F.2d 326, 337 (8th Cir.1977), the parties have not raised that issue, and we will take the approach of the panel in *In re Murphy* and assume such an exception exists. *Id.* at 338.

■ We review the holding of the District Court that the government failed to make a prima facie case of fraud or crime on the part of Agri and its attorneys under an abuse of discretion standard. *In re Berkley & Co., Inc., supra* at 553. Considerable deference must be accorded the rulings of the trial court in resolving issues such as presented in the instant appeal. Judge Vietor presided over the underlying two-week criminal trial of Agri and its employees, as well as the motions to quash the instant subpoenas. It was Judge Vietor's orders which the government claimed were violated by Agri's counsel, leading to the claim of crime or fraud. His familiarity with the facts and actions of counsel below should not be lightly regarded.

Notwithstanding the significance these two documents might have upon the retrial of Agri and its three employees, the court below correctly concluded that it would be sheer speculation to infer that these doc-

uments would have affected the verdicts as to the other defendants.[3]

The government asserts that the lower court placed too great of a burden upon it in its application of the prima facie standard. Citing *In re Sealed Case*, 754 F.2d 395 (D.C.Cir.1983), the government argues that it should not be required to prove the intent of the attorneys in order to override the privileges. The opinions of the Court of Appeals for the District of Columbia do not support the government's argument herein that it is not required to make any showing of intent on the part of the attorneys. The measure of intent required by that Circuit is a matter of considerable dispute. *Compare In re Sealed Case, supra* at 402, 403, and *In re Sealed Case*, 676 F.2d 793, 812 and 825 (D.C.Cir.1982). The question of intent in this context should not become a "minitrial," *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), but it cannot be ignored. Mere coincidences in the physical evidence cannot form the basis for application of the crime or fraud exception to those privileges. *In re Sealed Case, supra* at 402. This is precisely what the District Court herein refused to do in the case at bar. He declined to infer that the government made a prima facie case of fraud or crime from the fact that the two documents were not included in the 800 documents surrendered during trial. This fact against the backdrop of the underlying criminal investigation of Agri forms the core of the government's attempt to make a case for application of the crime or fraud exception. We agree with the conclusion of the district court that this proof is too speculative.

The District Court's order quashing the grand jury subpoenas is affirmed.

FAGG, Circuit Judge, dissenting.

I respectfully dissent.

As the Supreme Court has recently noted, the grand jury is entrusted with "extraordinary powers of investigation and great responsibility for directing its own efforts[.] * * * [In exercising those powers,] 'the grand jury may compel the production of evidence * * * as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.'" *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983) (quoting *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974)). It is with this view of the grand jury in mind that I approach the present controversy.

The sealed documents here at issue constitute ordinary work product and do not contain the mental impressions, conclusions, or opinions of the attorneys involved. Thus, although protected by the work product privilege in the grand jury context, *In re Grand Jury Proceedings*, 473 F.2d 840, 845 (8th Cir.1973); *see also In re Sealed Case*, 676 F.2d 793, 810 n. 65 (D.C.Cir.1982) (*Sealed Case I* ), this privilege is not necessarily absolute and may be overcome in appropriate circumstances. One such circumstance that if established will defeat the work product privilege is commonly referred to as the crime or fraud exception. *See, e.g., In re Special September 1978 Grand Jury*, 640 F.2d 49, 61–63 (7th Cir. 1980); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979); *see also Sealed Case I,* 676 F.2d at 811 n. 67.

Two elements must be established in order for this exception to be applicable in a given situation. First, the government must make a prima facie showing of criminal activity, fraudulent behavior, or some "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *Sealed Case I,* 676 F.2d at 812, 814. Second, there must be a reasonably close relationship between the prima facie violation and the documents in question. *Id.* at 814–15. *See also In re Sealed Case*, 754 F.2d 395, 399 and n. 4

---

**3.** The court must be particularly careful in reviewing attempts to remove the protections afforded by the attorney-client and work product privilege where a new trial of the underlying offense remains to be conducted.

(D.C.Cir.1985) (*Sealed Case II*); *In re Murphy*, 560 F.2d 326, 338 (8th Cir.1977). In regard to this second element, "a finding that the work product reasonably relates to the subject matter of the possible violation should suffice." *Sealed Case I*, 676 F.2d at 815. Whether a sufficient showing has been made with respect to these two elements is committed to the sound discretion of the district court who will be overturned only if that discretion has been abused. *See Sealed Case II*, 754 F.2d at 399–400; *In re Berkley & Co.*, 629 F.2d 548, 553 (8th Cir.1980).

Unlike the court, I believe sufficient evidence was presented by the government from which a "prudent person [would] have a reasonable basis to suspect" that the attorneys knew certain evidence existed, were aware it should be disclosed, yet knowingly failed to do so. *See Sealed Case II*, 754 F.2d at 399 n. 3. Thus, a prima facie showing of misconduct has been established. I further conclude that a reasonably close relationship exists between this misconduct and the documents here at issue. Central to the grand jury's inquiry is whether the attorneys involved had seen and were aware of certain evidence prior to trial. The documents in question speak directly to this issue.

The district court, in reaching the opposite conclusion, abused its discretion by embarking upon a detailed and highly refined analysis, effectively placing itself in the role of the trier of fact and vigorously insisting that the government convince it that there was wrongdoing on the part of the attorneys. Rather than affording the government all reasonable inferences in support of its position, the district court essentially weighed evidence, made credibility determinations, and at bottom placed itself in the shoes of the grand jury. In so doing, the trial court failed to realize that the two-step inquiry here involved is not intended to resemble a minitrial, particularly since the government, which must make the prima facie showing, "will not be privy to the information at issue." *Sealed Case I*, 676 F.2d at 814.

Applying the proper level of scrutiny, I conclude a sufficient showing has been made by the government. Thus, to the extent the attorneys contend that the documents are protected from grand jury scrutiny by the work product privilege, I would reverse the district court and enforce the government's grand jury subpoena.